UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

ROSE HAYES,                          :

                  Plaintiff,    :    12 Civ. 4370 (LAK)(HBP)

     -against-                  :    REPORT AND
                                     RECOMMENDATION
THE CITY OF NEW YORK, et al.,   :

                  Defendants.   :

----------------------------------X

          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE LEWIS A. KAPLAN, United States Dis-

trict Judge,


I.  Introduction


          By notice of motion dated February 7, 2014 (Docket Item

15), defendants move for an Order pursuant to Fed.R.Civ.P. 56,

granting them summary judgment dismissing certain claims.  For

the reasons set forth below, I respectfully recommend that the

motion be granted in part and denied in part.


II.  Facts


          This is a civil rights action brought pursuant to 42

U.S.C. § 1983 arising out of the arrest and prosecution of

plaintiff for an assault on Gloria Burgos ("Gloria") on August 14, 2010.

In August 2010, Gloria was married to Otoniel Burgos ("Otoniel") and lived on East 112th Street in Manhattan (Declaration of Assistant Corporation Counsel David M. Pollack, dated Feb. 7, 2014 (Docket Item 17) ("Pollack Decl."), Ex. C at 8-9). Otoniel had formerly been married to Wynne Burgos ("Wynne"), with whom he had had two children, Julisa and Isaiah; Otoniel and Wynne had shared custody of the children (Pollack Decl., Ex. G at 24-25). The children were staying with Gloria and Otoniel during the weekend of August 14, 2010 (Pollack Decl., Ex. C at 9, Ex. G at 26-27).

During the weekend, Gloria took Julisa to get a hair cut. The evidence in the record is inconsistent as to how the hair cut came about. Gloria testified that she took Julisa to get a hair cut at Julisa'a request (Pollack Decl., Ex. C at 10). Plaintiff testified that Julisa had told Wynne that it was Gloria's idea to take Julisa for a haircut (Plaintiff's Response to Defendants' Motion to Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 56, dated Feb. 28, 2014 (Docket Item 19) ("Pl.'s Resp."), Ex. 5 at 95-96). At that time, Wynne was a member of a religion that believed, among other things, that females should not get their hair cut, and she believed this

tenet was applicable to Julisa (Pollack Decl., Ex. C at 12; Pl.'s Resp., Ex. 4 at 1040).  Wynne was upset when she learned that her daughter's hair had been cut (Pl.'s Resp., Ex. 5 at 95-96).

On the evening of August 14, Wynne, the plaintiff, and two male companions, Pierre Appolon and Antonio Barnaby, had all agreed to travel by minivan from their residence in Brooklyn to see a movie in Yonkers (Pl.'s Resp., Ex. 4 at 1044, Ex. 5 at 96). Wynne intended to pick up her children from Otoniel and Gloria's apartment on the way to Yonkers and either take them to the movie or drop them off at her mother's house (Pl.'s Resp., Ex. 5 at 96).  On that same evening, Gloria  planned to attend religious services with Julisa, Isaiah and Otoniel at a church on the same block as her apartment  (Pollack Decl., Ex. C at 13).

At approximately 8:30 p.m. on that evening Gloria was involved in the physical altercation that gives rise to this action.  Not surprisingly, the accounts of how the altercation occurred differ.  According to Gloria, as she was walking to church, she was confronted by Wynne who asked Julisa, "Is this her?" and who then proceeded to attack her (Pollack Decl., Ex. C at 15 ).  Gloria testified that two other women and two men joined in the attack (Pollack Decl., Ex. C at 16).[1]  She was

---

[1]Although her testimony is not entirely clear, Gloria
(continued...)

repeatedly hit in her torso, back and head, she was bitten, and a
fingernail was ripped out when her assailants attempted to pull a
ring off her finger (Pollack Decl., Ex. C at 16-17).  The assail-
ants also cut her hair (Pollack Decl., Ex. C at 18).  Otoniel
came upon the scene and threw himself on top of Gloria to protect
her (Pollack Decl., Ex. C at 18).  Gloria suffered a fractured
spine and a fractured rib, among other injuries (Pollack Decl.,
Ex. C at 20).

Plaintiff denied that Wynne instigated the altercation.
According to plaintiff, after the minivan was parked in the
vicinity of Gloria's apartment, Wynne approached the apartment to
call for the children (Pl.'s Resp., Ex. 5 at 96).  Gloria an-
swered the door with the children, and, without any warning or
provocation, struck Wynne with her purse (Pl.'s Resp., Ex. 5 at
97).  The two then proceeded to fight.  Plaintiff testified that
she did not join the fight, but that she did leave the minivan to

---

[1](...continued)
appears to have testified that a total of three woman and two men
attacked her.  After describing the initial attack by Wynne,
Gloria testified as follows:  "And when I turned, there was a
tall man coming.  A woman who was tall too, but not too big; a
small man and a woman who had a cloth around her head" (Pollack
Decl., Ex. C at 16).  Thus, it appears to be Gloria's testimony
that, in addition to Wynne, she was attacked by a tall woman and
a woman with a cloth around her head.

remove the children from the area of the fight and to try to break up the fight (Pl.'s Resp., Ex. 5 at 97).

Although plaintiff claims she did not participate in the fight, New York City Police Officer Juan Inoa arrested her. The following day, plaintiff was arraigned on a felony complaint and released on her own recognizance (Pollack Decl., Ex. K at ¶ 5(a)).  The case was subsequently presented to a grand jury that indicted plaintiff, Wynne Burgos, Pierre Appolon and Antonio Barnaby, charging each with assault in the first degree, gang assault in the first degree, assault in the second degree and two counts of endangering the welfare of a child (Pollack Decl., Ex. H).  After her indictment, plaintiff's bail was set at $7,500 which she was unable to post.  Accordingly, plaintiff was de-tained from October 27, 2010 through June 3, 2011 when she was acquitted of all charges (Pollack Decl., Ex. A ¶ 21).

Based on the foregoing, plaintiff asserts 12 claims against the defendants:  (1) violation of her Fourth and Four-teenth Amendment rights based on an allegedly false arrest; (2) false imprisonment in violation of her Fourth and Fourteenth Amendment rights based on an allegedly false arrest; (3) a claim for violation of substantive due process based on the allegedly reckless investigation that was performed before plaintiff's arrest; (4) a claim against the City of New York for inadequately

5

training and supervising the arresting officer; (5) malicious prosecution in violation of plaintiff's Fourth Amendment rights; (6) violation of plaintiff's Eighth and Fourteenth Amendment rights based on the conditions of plaintiff's confinement; (7) a claim against the City of New York for inadequately training and supervising the corrections officers who had custody of plaintiff; (8) denial of a state created liberty interest without due process based on a state court's rejection of plaintiff's petition for a writ of habeas corpus; (9) common law false arrest; (10) common law false imprisonment; (11) common law intentional infliction of mental distress and (12) common law malicious prosecution (Pollack Decl., Ex. A).

III.  Analysis

    A.  Summary Judgment Standard

        The standards applicable to a motion for summary judgment are well-settled and require only brief review.

            Summary judgment may be granted only where there
            is no genuine issue as to any material fact and the
            moving party . . . is entitled to a judgment as a
            matter of law.  Fed.R.Civ.P. 56(c).  In ruling on a
            motion for summary judgment, a court must resolve all
            ambiguities and draw all factual inferences in favor of
            the nonmoving party.  Anderson v. Liberty Lobby, Inc.,
            477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202
            (1986).  To grant the motion, the court must determine
            that there is no genuine issue of material fact to be

tried.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23,
106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  A genuine
factual issue derives from the "evidence [being] such
that a reasonable jury could return a verdict for the
nonmoving party." Anderson, 477 U.S. at 248, 106 S.Ct.
2505.  The nonmoving party cannot defeat summary judg-
ment by "simply show[ing] that there is some metaphysi-
cal doubt as to the material facts," Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586,
106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), or by a factual
argument based on "conjecture or surmise," Bryant v.
Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The Su-
preme Court teaches that "all that is required [from a
nonmoving party] is that sufficient evidence supporting
the claimed factual dispute be shown to require a jury
or judge to resolve the parties' differing versions of
the truth at trial." First Nat'l Bank of Ariz. v.
Cities Serv. Co., 391 U.S. 253, 288-89, 88 S.Ct. 1575,
20 L.Ed.2d 569 (1968); see also Hunt v. Cromartie, 526
U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999).
It is a settled rule that "[c]redibility assessments,
choices between conflicting versions of the events, and
the weighing of evidence are matters for the jury, not
for the court on a motion for summary judgment."
Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997).

McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006); accord Hill

v. Curcione, 657 F.3d 116, 124 (2d Cir. 2011); Jeffreys v. City

of New York, 426 F.3d 549, 553-54 (2d Cir. 2005); Powell v. Nat'l

Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004).

      "Material facts are those which 'might affect the out-

come of the suit under the governing law,' and a dispute is

'genuine' if 'the evidence is such that a reasonable jury could

return a verdict for the nonmoving party.'" Coppola v. Bear

Stearns & Co., Inc., 499 F.3d 144, 148 (2d Cir. 2007), quoting

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord

McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007).  "'[I]n ruling on a motion for summary judgment, a judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-movant] on the evidence presented[.]'"  Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 788 (2d Cir. 2007), quoting Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 298 (2d Cir. 1996).

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra, 477 U.S. at 322-23, citing Fed.R.Civ.P. 56.

As noted in McClellan v. Smith, supra, 439 F.3d 137, a court cannot make credibility determinations or weigh the evidence in ruling on a motion for summary judgment.

> [T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.

8

> Lytle v. Household Mfg., Inc., 494 U.S. 545, 554-555
> (1990); Liberty Lobby, Inc., supra, at 254; Continental
> Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690,
> 696, n.6 (1962).  "Credibility determinations, the
> weighing of the evidence, and the drawing of legitimate
> inferences from the facts are jury functions, not those
> of a judge." Liberty Lobby, supra, at 255.  Thus,
> although the court should review the record as a whole,
> it must disregard all evidence favorable to the moving
> party that the jury is not required to believe.  See
> Wright & Miller 299.  That is, the court should give
> credence to the evidence favoring the nonmovant as well
> as that "evidence supporting the moving party that is
> uncontradicted and unimpeached, at least to the extent
> that that evidence comes from disinterested witnesses."
> Id., at 300.

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51

(2000)[2]; accord In re Dana Corp., 574 F.3d 129, 152 (2d Cir.

2009); Tolbert v. Queens College, 242 F.3d 58, 70 (2d Cir. 2001).

Defendants note in their reply that plaintiff has not

filed a statement of the material facts in dispute as required by

Local Civil Rule 56.1 and that pursuant to that rule, I may deem

the statements set forth in defendants' Rule 56.1 statement to be

admitted.  "A district court has broad discretion to determine

whether to overlook a party's failure to comply with local court

rules," and, thus, "it may in its discretion opt to conduct an

assiduous review of the record even where one of the parties has

_____

[2]Although the Court in Reeves was reviewing the denial of a
motion for judgment as a matter of law pursuant to Fed.R.Civ.P.
50, the same standards apply to a motion for summary judgment
pursuant to Fed.R.Civ.P. 56.  Reeves v. Sanderson Plumbing
Prods., Inc., supra, 530 U.S. at 150.

failed to file [a counter-statement under Local Rule 56.1]."
Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001)
(inner quotation marks and citations omitted).  Due to the
limited size of the record in this case, as a matter of discre-
tion, I decline to consider as uncontroverted the facts set forth
in defendants' Rule 56.1 statement by virtue of plaintiff's
default, and, to the extent permitted by the authorities dis-
cussed above, I have considered all submissions from all parties
in assessing whether the defendants are entitled to summary
judgment.  See Gantt v. Horn, 09 Civ. 7310 (PAE), 2013 WL 865844
at *1 n.2 (S.D.N.Y. Mar. 8, 2013) (Engelmayer, D.J.) (reviewing
of the record to fill gaps resulting from plaintiff's failure to
file a 56.1 counter-statement).[3]

        Defendants also point out that plaintiff has not
properly authenticated the evidentiary material she has submitted
in opposition to defendants' motion.  Although defendants are

---

        [3]Plaintiff's failure to controvert the Moving Defendants'
motion does not, of course, relieve the Moving Defendants from
"adduc[ing] admissible evidence in the record to support the
factual assertions contained in [their] Rule 56.1 Statement, as
[plaintiff] 'is not required to rebut an insufficient showing.'"
NAACP Legal Def. & Educ. Fund, Inc. v. U.S. Dep't of Hous. &
Urban Dev., 07 Civ. 3378 (GEL), 2007 WL 4233008 at *1 n.1
(S.D.N.Y. Nov. 30, 2007) (Lynch, D.J.), quoting Giannullo v. City
of New York, 322 F.3d 139, 140-41 (2d Cir. 2003); see also Vt.
Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d
Cir. 2004).

correct, I conclude that their objection is a technicality.  With

one exception that is not material to the resolution of the

motion, the evidentiary material submitted by plaintiff consists

of excerpts from the underlying criminal trial and excerpts from

testimony before the grand jury that indicted plaintiff; defen-

dants raise no issue concerning the authenticity of any of this

material.  Because plaintiff's factual material consists of sworn

testimony, the authenticity of which is not in issue, it has the

same evidentiary weight as an affidavit, and I shall consider it.


      B.    Plaintiff's 1983 and
            Common Law Claims for False
            Arrest and False Imprisonment
            (Claims 1, 2, 9 and 10)


      As explained by the Court of Appeals in Bernshtein v.

City of New York, 496 F. App'x 140, 141-142 (2d Cir. 2012):

> The elements of false arrest require the plaintiff to
> establish that "(1) the defendant intended to confine
> [the plaintiff], (2) the plaintiff was conscious of the
> confinement, (3) the plaintiff did not consent to the
> confinement, and (4) the confinement was not otherwise
> privileged." Weyant v. Okst, 101 F.3d 845, 853 (2d
> Cir. 1996) (alteration in original) (internal quotation
> marks and citation omitted).  The existence of probable
> cause to arrest "is a complete defense to an action for
> false arrest," id. at 852 (internal quotation marks
> omitted), "whether that action is brought under state
> law or under § 1983," Jenkins v. City of N.Y., 478
> F.3d 76, 84 (2d Cir. 2007) (internal quotation marks
> and citation omitted).  "[A]n arrest is not unlawful so
> long as the officer has knowledge of, or reasonably
> trustworthy information as to, facts and circumstances

11

sufficient to provide probable cause to believe that the person arrested has committed any crime." <u>Zellner v. Summerlin</u>, 494 F.3d 344, 369 (2d Cir. 2007) (emphasis added) (citing <u>Devenpeck v. Alford</u>, 543 U.S. 146, 155, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004)).[4]

<u>Accord</u> <u>Savino v. City of New York</u>, 331 F.3d 63, 75 (2d Cir. 2003).  A claim for false imprisonment requires proof of the same elements.  <u>Kilburn v. Vill. of Saranac Lake</u>, 413 F. App'x 362, 363 (2d Cir. 2011), <u>citing</u> <u>Posr v. Doherty</u>, 944 F.2d 91, 96 (2d Cir. 1991).

The only element of these claims that is in dispute here is whether Officer Inoa had probable cause to arrest plaintiff.  Defendants claim that there is no genuine issue of fact that Officer Inoa had probable cause to arrest plaintiff for the assault on Gloria Burgos, and, therefore, defendants are entitled to summary judgment dismissing the first, second, ninth and tenth claims.

Neither side has addressed the issue of which party bears the burden of proving either the existence or non-existence of probable cause.  Both the Second Circuit and numerous District Judges have concluded that where, as here, an individual is

---

[4]"Of course, in addition to the required elements under state law, a § 1983 false arrest plaintiff must prove the arrest took place 'under color of' state law.  <u>See</u> 42 U.S.C. § 1983." <u>Trueman v. New York State Canal Corp.</u>, 451 F. App'x 27, 29 n.2 (2d Cir. 2011).

arrested without a warrant, the defendant bears the burden of proving that the arrest is supported by probable cause. Dickerson v. Napolitano, 604 F.3d 732, 751 (2d Cir. 2010) ("When an arrest is not made pursuant to a judicial warrant, the defendant in a false arrest case bears the burden of proving probable cause as an affirmative defense.  Broughton v. State, 37 N.Y.2d 451, 458, 335 N.E.2d 310, 315, 373 N.Y.S.2d 87, 95 (1975)." ); accord, e.g., Curry v. City of Syracuse, 316 F.3d 324, 335 (2d Cir. 2003); Raysor v. Port Auth. of N.Y., 768 F.2d 34, 39-40 (2d Cir. 1985); Jackson v. City of New York, 11-CV-3028 (PKC), 2014 WL 1010785 at *9 n.22 (E.D.N.Y. Mar. 17, 2014); Naples v. Stefanelli, 972 F. Supp. 2d 373, 393 (E.D.N.Y. 2013); Toliver v. City of New York, 10 Civ. 3165 (PAC)(JCF), 2012 WL 7782720 at *5 (S.D.N.Y. Dec. 10, 2012) (Report & Recommendation) (Francis, M.J.), adopted at, 2013 WL 1155293 (S.D.N.Y. Mar 21, 2013) (Crotty, D.J.); Thomas v. Kelly, 903 F. Supp. 2d 237, 251 (S.D.N.Y. 2012) (A. Carter, D.J.); Dinler v. City of New York, 04 Civ. 7921 (RJS)(JCF), 2012 WL 4513352 at *3 (S.D.N.Y. Sept. 30, 2012) (Sullivan, D.J.).[5]

---

[5]A smaller number of cases have suggested that allocation of the burden of proof with respect to probable cause in a Section 1983 false arrest case remains an open question in the Second Circuit.  E.g., Davis v. Rodriguez, 364 F.3d 424, 433 n.8, 435 (2d Cir. 2004); Hoyos v. City of New York, 10-cv-4033 (NG), 2013
(continued...)

g         Because <u>Reeves v. Sanderson Plumbing Prods., Inc</u>.,
<u>supra</u>, 530 U.S. at 131, and its progeny teach that the testimony
of interested witnesses that support the movant cannot be consid-
ered on a summary judgment motion, <u>see</u> pages 8-9, above, defen-
dants' motion must be denied unless the evidence in the record,
exclusive of the testimony from Officer Inoa -- a party and
interested witness -- is so one-sided that a reasonable jury
would have to conclude that probable cause to arrest plaintiff
existed.  The evidence is not that strong.

        Apart from Officer Inoa's testimony, the only relevant
material in the record is the grand jury testimony of Gloria and
the grand jury and trial testimony of Otoniel.  Gloria testified
before the grand jury that two another women joined Wynne Burgos
in the attack but she did not identify either (Pollack Decl., Ex.
C at 16-17).  She further testified that she did not see who the
police arrested nor does she mention (at least in the excerpt
defendants submitted) making any statement to the police concern-
ing her attackers (Pollack Decl., Ex. C at 20).

---

[5](...continued)
WL 7811754 at *15 n.2 (E.D.N.Y. Dec. 11, 2013); <u>see also</u> 5 Hon.
Leonard B. Sand, <u>et al</u>., <u>Modern Federal Jury Instructions</u> at 87-
106 (2013).  Given that the overwhelming majority of cases have
concluded that the defendant bears the burden of establishing
probable cause, I conclude that the defendants bear the burden of
proving the existence of probable cause.

Otoniel's grand jury testimony does not identify plaintiff as one of the assailants.  Although his testimony is not entirely clear, he appears to have stated that a total of two men and three women were present at the scene of the attack (Pollack Decl., Ex. G at 30), but also stated that one of the women was "just standing there" (Pollack Decl., Ex. G at 31).  Otoniel testified as follows concerning what occurred when the police arrived at the scene:

> When they arrived, they were able to, to hold the minivan from leaving.  They came up to us.  And they started asking me, what's going on, what's going on.  But there was a big crowd and, you know, and thank God for the neighborhood.  They were helping the police saying this is what they saw before I got there.  And I also was telling them what happened.  Please, the police, hold them, I want to press charges.  Please, the police.

(Pollack Decl., Ex. G at 33-34).  Otoniel's grand jury testimony does not disclose the substance of what he told the police; it does not disclose whether he told the police plaintiff was one of the attackers or whether he told them plaintiff was the woman who was "just standing there."  Otoniel also testified that he did not see which women the police arrested (Pollack Decl., Ex. G at 35).

At trial, Otoniel testified that he saw plaintiff standing at his wife's feet but that he did not see plaintiff strike his wife (Pl.'s Resp., Ex. 6 at 301-02).  Specifically,

15

after identifying plaintiff as the woman standing by his wife's
feet, Otoniel testified:

> I remember her walking back and forth and yelling.
> I don't know exactly what she was yelling.  I know she
> was holding something, a chain or medallion.  She kept
> holding it.  When I did open the door, I did see her
> getting up by my wife's feet, and the two guys were
> just standing there.  I didn't see them [sic].  They
> were just standing next to Gloria.
>
> Did you see Gloria hit anybody?
>
> No, I did not see Gloria hit anybody.
>
> Did you see Gloria kick anybody?
>
> No.
>
> Did you see either one of those persons hit or kick
> Gloria?
>
> No.  I didn't see anybody.  I only saw [Wynne holding
> Gloria].

(Pl.'s Resp., Ex. 6 at 301-02).

Otoniel testified as follows concerning his actions
when the police arrived:

> When I got up, I asked the police officers to
> arrest them.  They were asking me who, and I pointed to
> all four of them.  I said, Them [sic] right there
> walking by the minivan.  They had a minivan by the fire
> hydrant across from where I lived.

(Pl.'s Resp., Ex. 6 at 305).

Probable cause is not a difficult standard to meet.
Probable cause to arrest is established if the arresting officers
had knowledge or reasonably trustworthy information sufficient to

warrant a person of reasonable caution in the belief that the
individual in question committed a crime.  See Florida v. Harris,
133 S. Ct. 1050, 1055 (2013).

> The test for probable cause is not reducible to "pre-
> cise definition or quantification." Maryland v.
> Pringle, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d
> 769 (2003).  "Finely tuned standards such as proof
> beyond a reasonable doubt or by a preponderance of the
> evidence . . . have no place in the [probable-cause]
> decision." Gates, 462 U.S., at 235, 103 S.Ct. 2317.
> All we have required is the kind of "fair probability"
> on which "reasonable and prudent [people,] not legal
> technicians, act." Id., at 238, 231, 103 S.Ct. 2317
> (internal quotation marks omitted).
>
> In evaluating whether the State has met this
> practical and common-sensical standard, we have consis-
> tently looked to the totality of the circumstances.
> See, e.g., Pringle, 540 U.S., at 371, 124 S.Ct. 795;
> Gates, 462 U.S., at 232, 103 S.Ct. 2317; Brinegar v.
> United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 93
> L.Ed. 1879 (1949).  We have rejected rigid rules,
> bright-line tests, and mechanistic inquiries in favor
> of a more flexible, all-things-considered approach.  In
> Gates, for example, we abandoned our old test for
> assessing the reliability of informants' tips because
> it had devolved into a "complex superstructure of
> evidentiary and analytical rules," any one of which, if
> not complied with, would derail a finding of probable
> cause.  462 U.S., at 235, 103 S.Ct. 2317.  We lamented
> the development of a list of "inflexible, independent
> requirements applicable in every case." Id., at 230, n.
> 6, 103 S.Ct. 2317.  Probable cause, we emphasized, is
> "a fluid concept—turning on the assessment of probabil-
> ities in particular factual contexts—not readily, or
> even usefully, reduced to a neat set of legal rules."
> Id., at 232, 103 S.Ct. 2317.

Florida v. Harris, supra, 133 S. Ct. at 1055-56.  "[T]he standard
of probable cause [does not] imply 'more probable than not' . . .

." <u>United States v. Travisano</u>, 724 F.2d 341, 346 (2d Cir. 1983).
<u>See also</u> <u>United States v. Wagner</u>, 989 F.2d 69, 72 (2d Cir. 1993);
<u>United States v. Nersesian</u>, 824 F.2d 1294, 1306 (2d Cir. 1987).
Probable cause deals not "'with hard certainties, but with
probabilities.'" <u>Texas v. Brown</u>, 460 U.S. 730, 742 (1983),
<u>quoting</u> <u>United States v. Cortez</u>, 449 U.S. 411, 418 (1981);
<u>Walczyk v. Rio</u>, 496 F.3d 139, 156 (2d Cir. 2007) ("While probable
cause requires more than a mere suspicion of wrongdoing, its
focus is on probabilities, not hard certainties." (internal
citations and quotation marks omitted)).  The fact that an
innocent explanation may be consistent with the facts alleged
does not negate probable cause.  <u>United States v. Fama</u>, 758 F.2d
834, 838 (2d Cir. 1985); <u>United States v. Webb</u>, 623 F.2d 758, 761
(2d Cir. 1980).  Probable cause requires only a probability or a
substantial chance of criminal activity, not an actual showing of
criminal activity.  <u>Illinois v. Gates</u>, 462 U.S. 213, 244 n.13
(1983); <u>United States v. Harwood</u>, 998 F.2d 91, 96 (2d Cir. 1993);
<u>Feinberg v. City of New York</u>, 99 Civ. 12127 (RCC), 2004 WL
1824373 at *2 (S.D.N.Y. Aug. 13, 2004) (Casey, D.J.).

Where a police officer receives a report from a victim
or an eyewitness that an individual has engaged in criminal
activity, probable cause is generally established.  <u>Miloslavsky
v. AES Eng'g Soc'y</u>, 808 F. Supp. 351, 355 (S.D.N.Y. 1992) (Sweet,

18

D.J.), aff'd, 993 F.2d 1534 (2d Cir. 1993) ("[I]t is well--established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness."); accord Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000); see Panetta v. Crowley, 460 F.3d 388, 395-96 (2d Cir. 2006).

Notwithstanding the relatively modest nature of the probable cause standard, there are questions of fact concerning the events that preceded plaintiff's arrest and those questions of fact preclude the granting of summary judgment. If there were uncontradicted evidence from a disinterested source that either Otoniel or an eyewitness to the assault had told Officer Inoa that plaintiff assaulted Gloria, that statement would have provided sufficient probable cause to arrest plaintiff. The record, however, contains no such evidence. Although the record suggests that Otoniel said something to the police and that he pointed to four individuals, it does not disclose what he said or who he pointed to. The record is similarly vague with respect to the crowd's statements. Given the fact that there is evidence that there was a third female in the vicinity of the assault who, according to Otoniel, "was just standing there," and given the limitation that, at this stage, all ambiguities in the record must be resolved in favor of plaintiff, the record does not

19

eliminate the possibility that plaintiff was the woman who was just standing there and who did not participate in the attack, that she was not identified by Otoniel and that the police arrested the wrong individual.[6]  Thus, I cannot conclude that a reasonable jury could only conclude that there was probable cause to arrest plaintiff.

In their memorandum of law, defendants argue that "it is undisputed that Gloria Burgos spoke with Officer Inoa on the evening of August 14, 2010 following the brutal attack upon her. (R. 56.1, ¶ 9)" (Defendants' Memorandum of Law in Support of their Motion for Summary Judgment, dated Feb. 7, 2014 (Docket Item 16) ("Def'ts' Mem.") at 8).  In support of this proposition, defendants cite paragraph 9 of their Rule 56.1 statement. However, paragraph 9 of defendants' 56.1 Statement cites Officer

---

[6]One of the difficulties with this motion is that neither side has submitted any discovery material that directly addresses the issue of what Officer Inoa was told prior to plaintiff's arrest.  The parties rely exclusively on grand jury testimony and trial testimony given in connection with the underlying criminal prosecution.  Because the existence of probable cause to arrest was not at issue in those proceedings, the testimony concerning probable cause is rather sketchy and incomplete.  Deposition testimony or an affidavit from Otoniel or another disinterested witness setting forth what he told Officer Inoa prior to plaintiff's arrest and setting out exactly who was identified as an assailant would have been far more helpful.  Although this case may be susceptible to summary disposition, the record currently before me is so sparse that it simply cannot support that result.

Inoa's Criminal Court Complaint which cannot be considered to the extent that it supports defendants because it is the statement of an interested party.  Reeves v. Sanderson Plumbing Prods., Inc., supra, 530 U.S. at 151.  Defendants then go on to argue that "[i]t is also undisputed that, on the evening of August 14, 2010, Officer Inoa interviewed, at the scene of the attack, Otoniel Burgos and other people from the neighborhood and that those people identified plaintiff as one of the participants in the brutal attack upon Ms. Burgos. (R. 56.1, ¶ 7)"  (Def'ts' Mem. at 8).  This argument overstates the record.  Paragraph 7 of defendant's Rule 56.1 Statement only cites generally to Otoniel's grand jury testimony; no page number is given.  My own review of his testimony discloses that he never unequivocally testified that he identified plaintiff to Officer Inoa.  As the testimony quoted at pages 15 and 16 demonstrates, Otoniel used only pronouns to identify the assailants, and it is not clear whether he was identifying plaintiff.  The well-established rules for the resolution of summary judgment motions prohibit the resolution of Otoniel's ambiguous testimony in favor of the non-movants. Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) ("all ambiguities and  . . . all permissible factual inferences [are to be resolved and drawn] in favor of the party against whom summary judgment is sought"); accord Serv. Women's Action Network v.

21

Dep't of Def., No. 13-2002-cv, 2014 WL 2782186 at *1 (2d Cir.
June 20, 2014).

Defendants argue, in the alternative, that they are
entitled to summary judgment on the ground of qualified immunity.

> "Qualified immunity protects officials from lia-
> bility for civil damages as long as 'their conduct does
> not violate clearly established statutory or constitu-
> tional rights of which a reasonable person would have
> known.'" Gilles v. Repicky, 511 F.3d 239, 243 (2d Cir.
> 2007) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818,
> 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).  "[A] police
> officer is entitled to qualified immunity where (1) his
> conduct does not violate clearly established statutory
> or constitutional rights of which a reasonable person
> would have known, or (2) it was objectively reasonable
> for him to believe that his actions were lawful at the
> time of the challenged act." Jenkins v. City of New
> York, 478 F.3d 76, 87 (2d Cir. 2007) (quotation marks
> omitted).

Schwartz v. Marcantonatos, No. 13-2870, 2014 WL 2055932 at *2 (2d
Cir. May 20, 2014).  "Qualified immunity 'gives government
officials breathing room to make reasonable but mistaken judg-
ments about open legal questions.'" Lane v. Franks, --- S. Ct. -
--, --- 2014 WL 2765285 at *10 (June 19, 2014), quoting Ashcroft
v. al-Kidd, 563 U.S. ---, ---, 131 S. Ct. 2074, 2085 (2011).

The right to be free from an arrest without probable
cause was clearly established at the time of plaintiff's arrest.
Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007),
citing Martinez v. Simonetti, supra, 202 F.3d at 634.  Thus,
defendants will be entitled to qualified immunity if the arrest

22

was supported by "arguable probable cause."  Escalera v. Lunn,
361 F.3d 737, 743 (2d Cir. 2004).

> [The test for arguable probable cause] is "more favor-
> able to the officers than the one for probable cause,"
> [Escalera v. Lunn, supra, 361 F.3d at 743]; however,
> "'[a]rguable' probable cause should not be misunder-
> stood to mean 'almost' probable cause," Jenkins, 478
> F.3d at 87.  "Arguable probable cause exists if either
> (a) it was objectively reasonable for the officer to
> believe that probable cause existed, or (b) officers of
> reasonable competence could disagree on whether the
> probable cause test was met." Escalera, 361 F.3d at
> 743.

Schwartz v. Marcantonatos, supra, 2014 WL 2055932 at *2.

The same ambiguity in the record that prevents a
finding of probable cause as a matter of law also precludes the
conclusion that the arrest of plaintiff was objectively reason-
able.  The only facts unequivocally established by the record are
that plaintiff was present at the location of the altercation in
a minivan with Wynne and was in the minivan with Wynne after the
altercation (Pl.'s Resp., Ex. 4 at 1046, 1056).  Well-settled
Supreme Court precedent establishes that such association does
not establish probable cause.

> [A] person's mere propinquity to others independently
> suspected of criminal activity does not, without more,
> give rise to probable cause to search that person.
> Sibron v. New York, 392 U.S. 40, 62-63.  Where the
> standard is probable cause, a search or seizure of a
> person must be supported by probable cause particular-
> ized with respect to that person.  This requirement
> cannot be undercut or avoided by simply pointing to the

23

fact that coincidentally there exists probable cause to
search or seize another . . . .

Ybarra v. Illinois, 444 U.S. 85, 91 (1979).

Thus, because the record does not clearly resolve the
questions of fact concerning the events preceding plaintiff's
arrest, summary judgment should be denied with respect to plain-
tiff's first, second, ninth and tenth claims.

     C.   Plaintiff's 1983 and
        Common Law Claims for
        Malicious Prosecution
        (Claims 5 and 12)

"Claims for . . . malicious prosecution, brought under
§ 1983 to vindicate the Fourth and Fourteenth Amendment right to
be free from unreasonable seizures, are 'substantially the same'
as claims for ... malicious prosecution under state law." Jocks
v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003), citing Weyant v.
Okst, 101 F.3d 845, 852 (2d Cir. 1996) and Conway v. Vill. of
Mount Kisco, 750 F.2d 205, 214 (2d Cir. 1984). In addition to
proving that the defendant acted under color of state law, a 1983
plaintiff asserting a claim for malicious prosecution must prove
that (1) the defendant initiated a prosecution against the
plaintiff, (2) the defendant lacked probable cause to believe the
proceeding could succeed, (3) the defendant acted with malice,

and (4) the prosecution was terminated in the plaintiff's favor. Rohman v. N.Y.C. Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000).

Plaintiff's malicious prosecution claims suffer from a number of defects.  The amended complaint does not specify against whom these claims are asserted, and I assume they are asserted against Officer Inoa on the basis of his grand jury testimony (Pollack Decl., Ex. D).  In Rehberg v. Paulk, --- U.S. ----, 132 S. Ct. 1497 (2012), the Supreme Court held that a grand jury witness, such as Officer Inoa, was entitled to absolute immunity in a Section 1983 action based on his grand jury testimony.  This immunity cannot be circumvented by an allegation that the defendant testified falsely.  132 S. Ct. at 1506.  Rehberg presents an absolute bar to plaintiff's Section 1983 malicious prosecution claim.[7]

Second, where, as here, a grand jury returns an indictment against an individual, there is a rebuttable presumption that probable cause for the prosecution exists.[8]  McClellan v. Smith, supra, 439 F.3d at 145; Green v. Montgomery, 219 F.3d 52, 60 (2d Cir. 2000).  That presumption can be rebutted only by

---

[7]Plaintiff does not even address Rehberg in her opposition brief.

[8]A grand jury's indictment does not, however, give rise to a presumption that probable cause existed for the defendant's arrest.  McClellan v. Smith, supra, 439 F.3d at 145.

evidence of fraud, perjury, suppression of evidence or other evidence of police conduct taken in bad faith.  Savino v. City of New York, supra, 331 F.3d at 72; Bernard v. United States, 25 F.3d 98, 104 (2d Cir. 1994); Broughton v. State, 37 N.Y.2d 451, 456, 335 N.E.2d 310, 313, 373 N.Y.S.2d 87, 92 (1975) ("[T]he presumption [of probable cause] is rebuttable only where the plaintiff establishes fraud, perjury or the misrepresentation or falsification of evidence[.] (emphasis added)).  Plaintiff cites no evidence of any of these specified types of misconduct occurred here.  Rather she claims that the presumption of probable cause is rebutted by Officer Inoa's allegedly inadequate investigation (Plaintiff's Memorandum of Law, incorporated as part of Pl.'s Resp. ("Plaintiff's Mem.") at 17).  This argument is contrary to law.  The authorities cited above identify the specific types of misconduct that will rebut the presumption of probable cause, and a purportedly inadequate investigation is not a part of that list.  Moreover, even if an inadequate investigation did fit within the final catch-all category of misconduct that rebuts the presumption of probable cause, plaintiff does not offer even a scintilla of evidence that Officer Inoa acted in bad faith.  There is no evidence that Officer Inoa harbored any feeling toward plaintiff or that he acted to further some dishonest, malicious or evil purpose.

26

Finally, there is no evidence of malice in the record. "[M]alice may be shown by proving that the prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff." Manganiello v. City of New York, 612 F.3d 149, 160 (2d Cir. 2010) (inner quotations and citations omitted).  Plaintiff offers no evidence whatsoever that Officer Inoa acted with improper or wrongful motives, nor does she offer any evidence that when he testified before the grand jury, he did so in reckless disregard of plaintiff's rights.  Although plaintiff claims that the investigation preceding her arrest was inadequate, she offers no evidence concerning what investigatory steps Officer Inoa took before testifying in the grand jury; plaintiff offers no evidence that could support a finding that Officer Inoa's testimony before the grand jury recklessly disregarded plaintiff's rights.[9]

Thus, summary judgment should be granted dismissing plaintiff's fifth and twelfth claims.

---

[9]Although defendants assert additional arguments in support of the contention that the malicious prosecution claims should be dismissed, I do not reach them because the three alternative grounds for dismissal discussed in the text are more than sufficient to warrant dismissal.

27

D.   Plaintiff's Claim that
     Officer Inoa and the
     Corrections Officers Who
     Had Custody of Plaintiff Were
     Inadequately Trained and Supervised
     (Claims 4 and 7)

In an apparent effort to establish municipal liability, plaintiff alleges that Officer Inoa and the unnamed Correction Officers who had custody of plaintiff were inadequately trained and supervised.

Among other things, a plaintiff asserting such a claim must show that the tort feasor was acting outside the scope of his employment at the time he committed the tort that gives rise to the claim.  Newton v. City of New York, 681 F. Supp. 2d 473, 487-88 (S.D.N.Y. 2010) (Scheindlin, D.J.), citing Perkins v. City of Rochester, 641 F. Supp. 2d 168, 174-75 (W.D.N.Y. 2009); accord Colodney v. Continuum Health Partners, Inc., 03 Civ. 7276 (DLC), 2004 WL 829158 at *8 (S.D.N.Y. Apr. 15, 2004) (Cote, D.J.). Defendants contend that there is not only an absence of evidence that the individuals who committed the alleged torts were acting outside the scope of their employment, but that plaintiff affirmatively alleges that Officer Inoa was acting within the scope of his employment (Pollack Decl., Ex. A ¶ 9).

Plaintiff offers no response to this argument.  Thus, summary judgment should be granted dismissing these claims

because plaintiff has failed to identify any evidence in the
record that gives rise to a question of fact concerning an
essential element of the claims.  See Celotex Corp. v. Catrett,
supra, 477 U.S. at 322-23  In addition, because plaintiff has not
even responded to this aspect of defendant's motion, the fourth
and seventh claims may also be dismissed as abandoned.  Thomas v.
New York City Dep't of Educ., 10-CV-464 (SLT), 2013 WL 1346258 at
*17 (E.D.N.Y. Mar. 29, 2013) ("A court may, and generally will,
deem a claim abandoned when a plaintiff fails to respond to a
defendant's arguments that the claim should be dismissed."
(citation & internal quotations omitted)); accord Boco v. Argent
Mortg. Co., 13-CV-1165 (DLI)(CLP), 2014 WL 1312101 at *7
(E.D.N.Y. Mar. 31, 2014); White v. New York City Dep't of Educ.,
12 Civ. 1376 (CM), 2014 WL 1273770 at *10 (S.D.N.Y. Mar. 28, 2014
(McMahon, D.J.); Jain v. McGraw-Hill Cos., 827 F. Supp. 2d 272,
280 (S.D.N.Y. 2011) (Stein, D.J.); Lipton v. Cnty. of Orange,
N.Y., 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) (Conner, D.J.).

     E.   Plaintiff's Claim
         Concerning the Conditions
         of Her Confinement
         (Claim 6)

     Defendants initially moved for summary judgment dis-
missing plaintiff's conditions-of-confinement claim solely on the

ground that it was barred by the Prisoner Litigation Reform Act
("PLRA"), 42 U.S.C. § 1997e because plaintiff had failed (1) to
exhaust her administrative remedies and (2) to allege a physical
injury.[10]  In her opposition, plaintiff cited Greig v. Goord, 169
F.3d 165 (2d Cir. 1999), which held that the PLRA does not
require previously incarcerated individuals to allege exhaustion
of administrative remedies and pointed out that she had not been
incarcerated at the time this action was commenced. Accordingly,
defendants now limit their argument to plaintiff's failure to
allege a physical injury.

        42 U.S.C. § 1997e(e) provides "No Federal civil action
may be brought by a prisoner confined in a jail, prison, or other
correctional facility, for mental or emotional injury suffered
while in custody without a prior showing of physical injury . . .
."  The only case defendants cite in support of their argument is
Cox v. Malone, 199 F. Supp. 2d 135, 140 (S.D.N.Y. 2002), aff'd by
summary order, 56 F. App'x 43 (2d Cir. 2003) in which the Honor-
able Shira A. Scheindlin, United States District Judge, concluded

---

        [10]Oddly, defendants do not raise any issue concerning
whether Commissioner Schriro, the only defendant associated with
the New York City Department of Correction, was personally
involved in the constitutional violations alleged by plaintiff.
Because defendants do not raise the issue and the record before
me contains no evidence concerning the issue, I decline to raise
it mea sponte.

that the PLRA's physical injury requirement applied to actions
brought by former prisoners.[11]

Neither side here has addressed the two Court of
Appeals decisions, Harris v. Garner, 216 F.3d 970 (11th Cir.
2000) (en banc) and Kerr v. Puckett, 138 F.3d 321, 322-23 (7th
Cir. 1998), and the numerous District Court decisions reaching
the contrary result.[12]  E.g., McBean v. City of New York, 260
F.R.D. 120, 142-43 (S.D.N.Y. 2009) (Lynch, D.J.); Kelsey v.
County of Schoharie, 04-CV-299, 2005 WL 1972557 at *3 (N.D.N.Y.

---

[11]In Cox, Judge Scheindlin reasoned:

> Section 1997e(a) is a procedural requirement requiring
> prisoners to fully exhaust their claims within the
> prison system before bringing a federal action.  It
> makes no sense to apply this procedural requirement to
> former inmates who can no longer avail themselves of
> prison grievance procedures.  Section 1997e(e), on the
> other hand, is a substantive limitation on the type of
> actions that can be brought by prisoners.  Its purpose
> is to weed out frivolous claims where only emotional
> injuries are alleged.  This purpose is accomplished
> whether section 1997e(e) is applied to suits brought by
> inmates incarcerated at the time of filing or by former
> inmates incarcerated at the time of the alleged injury
> but subsequently released.  The fortuity of release on
> parole does not affect the kind of damages that must be
> alleged in order to survive the gate-keeping function
> of section 1997e(e).

199 F. Supp. 2d at 140 (emphasis in original).

[12]In Greig v. Goord, supra, 169 F.3d at 167 n.3, the Court
of Appeals for the Second Circuit expressly left open the
question of whether the PLRA's physical injury requirement
applied to actions brought by individuals who were not
incarcerated at the time the action was commenced.

Aug. 5, 2005); see also Morris v. Eversley, 343 F. Supp. 2d 234, 244 (S.D.N.Y. 2004) (limit on fees in 42 U.S.C. § 1997e(d) inapplicable to actions commenced after plaintiff's release) (Chin, then D.J., now Cir. J.).

Largely for the reasons set forth by Judge Lynch in McBean v. City of New York, supra, 260 F.R.D. 120, and Judge Chin in Morris v. Eversley, supra, 343 F. Supp. 2d 234, I conclude that the PLRA does not require an allegation of physical injury in an action concerning the conditions of confinement by an individual who is not incarcerated at the time the action is commenced.

In addition to the rationales offered in McBean and Morris, I offer only the following. The PLRA's language is fairly clear -- "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." Application of this provision to actions commenced by former prisoners effectively reads the limitation "by a prisoner con-fined in a jail, prison, or other correctional facility" out of the statute. Such an interpretation is contrary to the canon of statutory construction that "it is generally presumed that

32

statutes do not contain surplusage." <u>Arlington Cent. Sch. Dist.</u>
<u>Bd. of Educ. v. Murphy</u>, 548 U.S. 291, 299 n.1 (2006).

      In addition, although Judge Scheindlin took issue with
an interpretation of the PLRA under which the plaintiff's rights
turned on a fortuitous event, there are numerous situations in
which fortuitous events substantially alter the legal rights and
obligations of individuals.  The unexpected birth in the United
States of the child of an alien couple sojourning here on vaca-
tion is fortuitous, yet it confers citizenship on the child.  The
birth of a child on December 31, 2013 versus January 1, 2014 is
fortuitous, yet the former gives rise to a tax exemption for 2013
while the latter does not.  The selection of an individual for
grand jury service is fortuitous; certain individuals' names are
pulled from the drum while others are not.  Yet that fact does
not diminish the legal obligations of secrecy and attendance
imposed on those chosen to serve as grand jurors.  In short,
there is no constitutional (or logical) prohibition that pre-
cludes Congress from attaching legal consequences to fortuitous
events.

      Because defendants offer no other arguments concerning
plaintiff's conditions-of-confinement claim, their motion for
summary judgment dismissing plaintiff's sixth claim should be
denied.

33

F.   Plaintiff's Claim
     Alleging a Due Process
     Violation Arising out
     of the Deprivation of a
     State-Created Liberty Interest
     (Claim 8)

Defendants' final argument concerns plaintiff's claim that she was deprived of a state-created liberty interest without Due Process of law.

While plaintiff was detained prior to her trial, she filed a petition for a writ of habeas corpus in New York State Supreme Court alleging that she had been in custody longer than the period allowed by New York Criminal Procedure Law Section 30.30(2) (Pollack Decl., Ex. K).[13]  The petition was denied by the Supreme Court on April 27, 2011 (Pollack Decl., Ex. L), and the appeal was deemed withdrawn after plaintiff's counsel advised the Appellate Division of the Supreme Court that plaintiff had been released (Pollack Decl., Ex. M).  Plaintiff appears to be claiming that she was denied Due Process because, in plaintiff's view, the Supreme Court erred in denying the petition (Pollack Decl., Ex. A ¶ 77).

_____

[13]Subject to certain exceptions not relevant here, New York Criminal Procedure Law Section 30.30(2) provides in pertinent part that an individual in pretrial detention must be released on bail or on her own recognizance if the prosecution is not ready for trial within 90 days of the commencement of the period of detention.

Defendants contend that this claim should be dismissed because the Supreme Court afforded plaintiff all the process she was due.

Plaintiff's eighth claim should be dismissed, but not for the reasons cited by plaintiff.  Plaintiff's eighth claim essentially seeks review of the New York Supreme Court's decision denying plaintiff's petition for a writ of habeas.  This court lacks subject matter jurisdiction to hear such a claim pursuant to the Rooker-Feldman Doctrine.  As recently explained by the Court of Appeals:

> Under the Rooker-Feldman doctrine, district courts lack subject matter jurisdiction over claims that effectively challenge state court judgments.  See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) ("[A] United States District Court has no authority to review final judgments of a state court in judicial proceedings."); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923) ("[N]o court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify [a state court's] judgment for errors . . . ."). This jurisdictional rule bars challenges to "cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." Feldman, 460 U.S. at 486, 103 S.Ct. 1303.  Specifically, the Rooker-Feldman doctrine acts as a jurisdictional bar to cases:  (1) "brought by state-court losers," (2) "complaining of injuries caused by state-court judgments," (3) that were "rendered before the district court proceedings commenced," and (4) "inviting district court review and rejection of those [state court] judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).

Russo v. DiLieto, No. 13-2397, 2014 WL 2016604 at *1 (2d Cir. May 19, 2014); accord Russo v. GMAC Mortg., LLC, 549 F. App'x 8, 9-10 (2d Cir. 2013).  Thus, the Court lacks subject matter jurisdiction to review the state court's decision concerning plaintiff's habeas corpus petition.

This claim should also be dismissed as abandoned because plaintiff offers no response to defendants' arguments concerning this claim.  Boco v. Argent Mortg. Co., supra, 2014 WL 1312101 at *7; White v. New York City Dep't of Educ., supra, 2014 WL 1273770 at *10; Thomas v. New York City Dep't of Educ., supra, 2013 WL 1346258 at *17; Jain v. McGraw-Hill Cos., supra, 827 F. Supp. 2d at 280; Lipton v. Cnty. of Orange, N.Y., supra, 315 F. Supp. 2d at 446.

Thus, summary judgment should also be granted dismissing plaintiff's eighth claim.

G.  Plaintiff's
Miscellaneous Arguments

At the very end of their opening memoranda (Def'ts' Mem. at 22), defendants assert several arguments that are unconnected to any specific claim but deserve comment.

First, defendants contend that Commissioner Dora Schriro should be dismissed because, apart from her identifica-

36

tion in the caption and the allegation that she is the Commis-
sioner of the New York City Department of Correction, the amended
complaint contains no substantive allegations against her.

Defendants have misread the amended complaint.  Para-
graph 53 of the amended complaint states:

> Plaintiff states that Defendant New York City Correc-
> tions Commissioner and the City of New York were delib-
> erately indifferent to the prison conditions at the New
> York City Department of Corrections where the plaintiff
> was confined on 27 October 2010 until 3 June 201, even
> though plaintiff made NYC Corrections Officer aware of
> the conditions at said location.

(Amended Complaint ¶ 53).  Although there is serious question
concerning whether the foregoing adequately alleges Schriro's
personal involvement and is sufficient to state a claim, defen-
dants do not raise that issue.  Thus, because the amended com-
plaint contains some substantive allegations against Schriro,
this aspect of defendants' motion is denied.  Cf. Dove v. Fordham
Univ., 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) (Sweet, D.J.)
(dismissing complaint where defendant was named in caption but
body of complaint contained no allegations explaining how defen-
dant violated the law or injured plaintiff); accord Bernstein v.
City of New York, 06 Civ. 895 (RMB), 2007 WL 1573910 at *10
(S.D.N.Y. May 24, 2007) (Berman, D.J.); Holloway v. Carey, 482 F.
Supp. 551, 553 (S.D.N.Y. 1979) (Weinfeld, D.J.).

Finally, defendants argue that the court should decline to exercise supplemental jurisdiction over plaintiff's parallel state claims.  To the extent the federal claims are dismissed, the parallel state claims should also be dismissed.  <u>See</u> <u>generally</u> <u>Carlsbad Tech., Inc. v. HIF Bio, Inc.</u>, 556 U.S. 635, 639-40 (2009).

IV.  <u>Conclusion</u>

Accordingly, for all the foregoing reasons, I respectfully recommend that summary judgment be granted dismissing plaintiff's fourth, fifth, seventh, eighth and twelfth claims and that summary judgment be denied with respect to plaintiff's first, second, sixth, ninth and tenth claims.[14]  If adopted, this Report and Recommendation will leave plaintiff's first, second, third, sixth, ninth, tenth and eleventh claims pending.

V.  <u>OBJECTIONS</u>

Pursuant to 28 U.S.C. § 636(b)(1)(c)) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written

---

[14]Defendants did not seek summary judgment with respect to plaintiff's third and eleventh claims.

objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and

responses thereto) shall be filed with the Clerk of the Court,

with courtesy copies delivered to the Chambers of the Honorable

Lewis A. Kaplan, United States District Judge, 500 Pearl Street,

Room 2240, and to the Chambers of the undersigned, 500 Pearl

Street, Room 750, New York, New York 10007.  Any requests for an

extension of time for filing objections must be directed to Judge

Kaplan.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT

IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.

Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male

Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension

Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v.

Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair

Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714

F.2d 234, 237-38 (2d Cir. 1983).

Dated:  New York, New York
        July 7, 2014

                              Respectfully submitted,


                              HENRY PITMAN
                              United States Magistrate Judge


39

Copies transmitted to:

Lawrence P. LaBrew, Esq.
11th Floor
110 Wall Street
New York, New York  10005

David M. Pollack, Esq.
Felicia Gross, Esq.
Assistant Corporation Counsels
City of New York
100 Church Street
New York, New York  10007